UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>  v.<br><br>DERICO FULLER,<br><br>      Defendant. | CASE NO. CR17-0324JLR<br><br>ORDER DENYING RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1) |

### I. INTRODUCTION

Before the court is Defendant Derico Fuller's renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Mot. (Dkt. # 46); *see also* Reply (Dkt. # 52).) Plaintiff United States of America ("the Government") opposes the motion. (*See* Resp. (Dkt. # 50).) The court has considered the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Fuller's motion for compassionate release.

//

ORDER - 1

## II. BACKGROUND

On December 22, 2017, the Government charged Mr. Fuller with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344(1) and (2) and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*See* Information (Dkt. # 1).) The Government accused Mr. Fuller of orchestrating a scheme in which he stole a victim's personal information, manufactured counterfeit identification documents and checks, and committed hundreds of thousands of dollars of bank fraud. (*See* Am. Presentence Report ("PSR") (Dkt. # 20) (sealed) ¶¶ 6-11.) Mr. Fuller pleaded guilty to both charges on January 4, 2018. (*See* Plea Agmt. (Dkt. # 10).) On July 23, 2018, the court sentenced Mr. Fuller to 65 months of imprisonment and five years of supervised release. (*See* Am. Judgment (Dkt. # 28) at 1-3.) Mr. Fuller is currently housed at a minimum-security camp at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). (Fuller Decl. (Dkt. # 47) ¶ 2.) Mr. Fuller alleges that his expected release date is November 29, 2021, meaning that he has more than 18 months remaining on his sentence. (*See* Mot. at 4.)

Mr. Fuller's criminal history spans 20 years. (*See* PSR ¶¶ 1, 31-40.) He has felony and misdemeanor convictions in ten separate cases, including for drug crimes, forgery, perjury, bank fraud, aggravated identity theft, and assault in the fourth degree. (*See id.*) Mr. Fuller has one additional federal conviction for operating a bank fraud scheme similar to the one that he pleaded guilty to in 2018. In 2009, he was convicted of being the leader of a bank fraud scheme in which he printed counterfeit checks and had accomplices use them to commit more than $500,000 of bank fraud. (*See id.* ¶ 39.) Mr.

Fuller was sentenced to 75 months' imprisonment for the crimes of (1) conspiracy to commit bank fraud, (2) Social Security Number fraud, and (3) aggravated identity theft. (*See id.*)  When Mr. Fuller was sentenced for these crimes, he submitted a letter to Judge Pechman in which he said, "I have completely changed my ways," and also wrote, "I am going to apply action with my knowledge and become someone great as a citizen within the community." (*See* Gov. Sentencing Mem. (Dkt. # 22) at 2, Ex. 1.)  Despite these representations, Mr. Fuller engaged in the fraudulent scheme that resulted in his current conviction while he was on federal supervision from his first fraudulent scheme. (*See* PSR ¶¶ 6-11.)

The current motion is Mr. Fuller's second request for compassionate release.  He filed his first motion on April 6, 2020. (*See* 4/6/20 Mot. (Dkt. # 38).)  In that motion, Mr. Fuller argued that he was entitled to compassionate release because he suffered from asthma and sleep apnea, which he alleged placed him at a higher risk of suffering complications from COVID-19. (*See id.* at 1-4.)  On April 13, 2020, the court denied Mr. Fuller's motion for failure to comply with the administrative exhaustion requirements in 18 U.S.C. § 3582(c)(1)(A). (*See* 4/13/20 Order (Dkt. # 44) at 4-6.)  Although the court noted that its denial was without prejudice to Mr. Fuller re-filing the motion once he complied with applicable exhaustion requirements, the court specifically warned Mr. Fuller "that it considers motions for release from imprisonment due to the COVID-19 pandemic to be highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant." (*See id.* at 6.)  The court noted that Mr. Fuller "did not include any documentary evidence in support of his

1  alleged medical conditions" (*see id.* at 2) and advised Mr. Fuller that "requests for release

2  that are based on vague, generalized, or unsupported allegations are unlikely to receive

3  favorable consideration" (*see id.* at 6-7).

4       Mr. Fuller's renewed request for compassionate release largely mirrors his first.

5  He argues that he is entitled to compassionate release because he is an African-American

6  male with asthma and sleep apnea, which he alleges puts him at a higher risk of suffering

7  complications from COVID-19 if he contracts the disease while incarcerated. (*See* Mot.

8  at 5.) Although Mr. Fuller's motion does not state his age, the amended presentence

9  report (the "PSR") indicates that Mr. Fuller is 40 years old. (*See* PSR at 2.)

10       Mr. Fuller did not include any documentary evidence in support of his alleged

11  medical conditions. (*See generally* Mot.; Fuller Decl.) Instead, the sole evidence Mr.

12  support of Mr. Fuller's allegation regarding his medical conditions comes from his

13  declaration, where he claims that he was diagnosed with asthma that was "not severe" at

14  age 9 and that he has been "told" that he has displayed symptoms of sleep apnea on

15  "several different occasions." (*See* Fuller Decl. ¶¶ 3-4.) Neither condition is reflected in

16  Mr. Fuller's PSR, which specifically states that "Mr. Fuller advised being in good

17  health." (*See* PSR ¶ 73.) Similarly, Mr. Fuller's original request for compassionate

18  release to the Bureau of Prisons ("BOP"), which was sent on April 3, 2020, makes no

19  mention of the asthma and sleep apnea conditions that now serve as the basis for Mr.

20  Fuller's motion. (*See* 1st Zink Decl. (Dkt. # 39) ¶ 2, Ex. 1.[1])

21

22      [1] After the court noted in its prior order that Mr. Fuller's request to BOP failed to include his medical conditions as grounds for compassionate release (*see* 4/13/20 Order at 3), Mr.

The Government states that an 80-page printout of Mr. Fuller's medical records provided by BOP contains no reference to Mr. Fuller suffering from asthma or sleep apnea. (*See* Resp. at 2.) The Government did not file a copy of Mr. Fuller's medical records or submit a sworn declaration from counsel regarding the Government's review of his medical records. (*See generally* Dkt.) However, Mr. Fuller acknowledges that asthma is not in his BOP medical records because he is able to "self-manage" the condition "in normal times" and he notes that BOP has not diagnosed him with sleep apnea because BOP has constantly transferred him among BOP facilities, which has allegedly prevented him from being tested and treated for that condition. (*See* Reply at 5-6; Fuller Decl. ¶¶ 3-4.)

### III.   ANALYSIS

**A.   Standard for Compassionate Release**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original; quoting 18 U.S.C. § 3582(b)). As relevant to Mr. Fuller's motion, those circumstances are set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate, who satisfies certain statutorily mandated administrative exhaustion procedures, to file a

---

Fuller's counsel amended Mr. Fuller's compassionate release request to BOP to include Mr. Fuller's allegation that he suffers from asthma and sleep apnea as grounds for compassionate release (*see* 2d Zink Decl. (Dkt. # 48) ¶ 2, Ex. 2).

motion with the district court for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). As amended, the statute now provides:

> (c) **Modification of an imposed term of imprisonment**.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> \*\*\*\*\*\*\*\*\*\*
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (italics added indicating the portion of the statute the First Step Act amended).

Thus, the statute now provides the court with authority to reduce a sentence upon the motion of a defendant if three conditions are met: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing

Commission's policy statement. *See id.* Although the exhaustion requirement barred Mr. Fuller's first request for compassionate release (*see* 4/13/20 Order at 4-6), the Government concedes that Mr. Fuller has now satisfied the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A). (*See* Resp. at 8.)

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) is found in the United States Sentencing Guidelines ("USSG") § 1B1.13.[2] The policy statement provides in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13. Because Mr. Fuller is not at least 70 years old and was not sentenced under 18 U.S.C. § 3559(c), only sections (1)(A), (2), and (3) of the Sentencing

---

[2] The Sentencing Commission is statutorily required to create the referenced policy statement. *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Commission's policy statement are relevant to Mr. Fuller's motion. Thus, under the policy statement, Mr. Fuller is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

The Sentencing Commission's application notes to this policy statement provide further guidance. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13 cmt. n.1.[3]

---

[3] In subparts (B) and (C), the application note also addresses family circumstances and circumstances involving defendants who are at least 65 years old—neither of which are applicable to Mr. Fuller's motion. *See id.* In subpart (D), the application note also provides that the Director of BOP may determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions

1          Although the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) barred Mr.

2    Fuller's first request for compassionate release (*see* 4/13/20 Order at 4-6), the

3    Government concedes that Mr. Fuller has now satisfied that requirement (*see* Resp. at 8).

4    Thus, the court turns to consideration of the merits of Mr. Fuller's request for

5    compassionate release.

6    **B.     Extraordinary and Compelling Reasons**

7           Mr. Fuller bears the burden of establishing that compelling and extraordinary

8    reasons exist that justify compassionate release. *Riley v. United States*, No.

9    C19-1522JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020). Mr. Fuller bases

10   his argument that extraordinary and compelling reasons for release exist in this case on

11   the COVID-19 pandemic and his "particular risk to complications from COVID-19" that

12   arise from his asthma and sleep apnea. (*See* Mot. at 6-9.)

13          Mr. Fuller fails to support the central premise of his argument—that he is at a high

14   risk of complications from COVID-19. Mr. Fuller, who is 40 years old, recognizes that

15   he is not elderly or amongst the age groups most vulnerable to COVID-19 infections.

16   (*See* Reply at 6.) He also concedes that he has not been diagnosed with sleep apnea and

17   that his conclusion that he suffers from that condition is based on statements from

18   unidentified individuals about his sleep behaviors. (*See* Fuller Decl. ¶ 4.) Although he

19   claims he was diagnosed with asthma at the age of 9 and that his asthma is currently

20   "moderate," he recognizes that his BOP medical records do not reflect that he has asthma

---

22   (A) through (C)." *See id.* Mr. Fuller does not contend that the Director of BOP has determined that an extraordinary or compelling reason for a reduction in sentence exists in his case.

ORDER - 9

(*see* Reply at 5), and he submits no other medical records pre-dating his time with BOP that would confirm his diagnosis (*see generally* Fuller Decl. ¶ 3). The court cannot conclude that Mr. Fuller's asserted medical conditions merit compassionate release from detention when Mr. Fuller has failed to submit any competent evidence beyond his own say so detailing the existence and severity of those conditions.[4]

Moreover, even if Mr. Fuller had established that he was in a higher risk group for COVID-19 complications, the court would still conclude that he failed to establish that extraordinary and compelling reasons exist in this case. Mr. Fuller cannot meet the strictures of subpart (A) of the Sentencing Commission's application note because he does not suffer from a "terminal illness" and none of his medical conditions "substantially diminish" his ability "to provide self-care" within the facility in which he is confined. *See* U.S.S.G. 1B1.13 cmt. n.1. Indeed, Mr. Fuller has not shown that the facility in which he is confined is failing to adequately manage either his alleged sleep apnea or asthma. (*See generally* Mot.) In fact, BOP's medical files do not even reflect that Mr. Fuller has these conditions (*see* Resp. at 2; Reply at 5), which suggests that

---

[4] Further, Mr. Fuller's bald assertion that his status as an African-American male "contribute[s] to an intolerable risk" of complications from COVID-19 is insufficient to warrant compassionate release. (*See* Reply at 6-7.) Even assuming that Mr. Fuller is correct that "men incur greater complications from COVID-19 than women" and that African Americans are "more likely to die from COVID-19" than Caucasians (*see id.*), these facts do not establish that Mr. Fuller is at a particularly high risk for complications from a COVID-19 infection—especially since he is not in a vulnerable age group and has not established that he suffers from problematic underlying conditions. As the court previously warned Mr. Fuller, the court cannot paint with a broad brush when it comes to assessing the facts and arguments submitted in support of motions for compassionate release. (*See* 4/13/20 Order at 6 ("[R]equests for release that are based on vague, generalized, or unsupported allegations are unlikely to receive favorable consideration.").)

neither condition has been serious enough to merit medical attention while Mr. Fuller has been in BOP custody. Thus, Mr. Fuller's alleged medical conditions, standing alone, do not justify an order requiring compassionate release.

Finally, the present crisis surrounding the COVID-19 pandemic does not mean that Mr. Fuller is entitled to compassionate release. Even if the court assumed that Mr. Fuller's underlying medical conditions existed and were of sufficient severity to make him more vulnerable to COVID-19 complications, he has not contracted a COVID-19 infection. Thus, Mr. Fuller relies on the possibility that he may become infected with COVID-19 while confined to justify his release. (*See generally* Mot.) However, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release." *See Riley*, 2020 WL 1819838, at *7 (collecting cases). The court does not discount the dangers associated with COVID-19 at a detention facility like FCI Sheridan. However, as the Government points out, BOP has protocols in place to combat the spread of infectious diseases and a detailed plan specifically for COVID-19. (*See* Resp. at 9.) Although Mr. Fuller's declaration alleges that the conditions at FCI Sheridan are "ripe" for COVID-19 infections, he has not provided evidence indicating that BOP is not reasonably equipped to handle the challenge of COVID-19 or to provide him with appropriate medical care if he should become sick. (*See generally* Mot.; Reply.) Indeed, BOP's protocols and efforts to prevent infections at FCI Sheridan appear to be working, as that facility

//

currently has no confirmed cases of COVID-19.[5] (*See* Mot. at 3 ("BOP currently reports no confirmed cases at Mr. Fuller's facility[.]"); Resp. at 9 ("The lack of COVID-19 cases at FCI-Sheridan to date is a result of the extensive steps that BOP has taken to prevent the spread of the disease in its institutions."); *see also* https://www.bop.gov/coronavirus/ (last visited May 20, 2020).

As discussed above, to establish "extraordinary and compelling reasons" for a reduction in his sentence, Mr. Fuller must show that he is suffering from either a terminal illness or a "serious physical or mental condition . . . that substantially diminishes" his "ability . . . to provide self-care within the environment of a correctional facility and from which he is not expected to recover." USSG § 1B1.13, cmt. n.1. Those circumstances, however, are not met by the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk exists. The compassionate release provision of § 3582(c)(1) does not authorize the court to release an inmate prophylactically on the mere possibility that he may contract a virus or to modify his sentence based on the mere existence of COVID-19. There may be factual circumstances involving COVID-19 in a prison or other detention facility that would warrant the modification of an inmate's sentence under § 3582(c)(1), but those circumstances are not presently before this court.

//

---

[5] Many of the authorities cited in Mr. Fuller's briefing arise out of BOP facilities other than FCI Sheridan. (*See, e.g.*, Reply at 1-3.) As the court previously noted, it considers requests for compassionate release to be highly dependent on the "specific conditions of confinement" faced by the defendant. (4/13/20 Order at 6.) Thus, cases that turn on conditions at BOP facilities other than FCI Sheridan are not persuasive.

Nevertheless, Mr. Fuller argues that under the First Step Act's amendments to 18 U.S.C. § 3582(c)(1)(A), the court is no longer bound to the Sentencing Commission's policy statement. (*See* Reply at 4-5.) The court recently considered and rejected this exact argument in another COVID-19 compassionate release case. *See Riley*, 2020 WL 1819838, at *8 ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)."). For the same reasons identified in *Riley*, the court rejects Mr. Fuller's argument that the Sentencing Commission's policy statement is no longer binding.[6] *See id.*

In sum, the court concludes that Mr. Fuller failed to establish that "extraordinary and compelling reasons" reasons exist here. The court explicitly warned Mr. Fuller not to seek release "based on vague, generalized, or unsupported allegations." (*See* 4/13/20 Order at 6-7.) Yet, Mr. Fuller asks this court for compassionate release based on vague claims that his conditions of confinement are "ripe" for COVID-19 infections, generalized concerns about the COVID-19 pandemic, and unsupported allegations that he

---

[6] To the extent that Judge Bryan's interpretation of the ongoing viability of the Sentencing Commission's policy statement in *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020), differs from the interpretation advanced by this court in *Riley*, the court respectfully declines to adopt Judge Bryan's interpretation, as it is entitled to do. *See Starbuck v. San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of *stare decisis* does not compel one district judge to follow a decision of another in the same district.").

is in a high-risk demographic for COVID-19 complications.  That is not sufficient to establish the extraordinary and compelling reasons necessary to justify compassionate release.  As such, the court DENIES Mr. Fuller's motion.

**C.    Danger to Others or the Community**

In addition, the court independently denies Mr. Fuller's motion for compassionate release because he fails to demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* USSG § 1B1.13(2).  Mr. Fuller alleges that he is not a danger to the community because he is not a "violent offender" and he does not "have a history of serious violence." (*See* Mot. at 9-10.)  He also points out that he has no disciplinary record during his incarceration and that he has participated in programming.  (*See* Fuller Decl. ¶¶ 7-8; 2d Zink Decl. at ¶¶ 5-6.)  He also claims that his proposed release plan will provide him with adequate support from family members, which he believes will help him become a "law abiding citizen" if released.  (*See* Mot. at 9-10; Reply at 7.)

Under 18 U.S.C. § 3142(g), the court should look to the nature and circumstances of the crime charged and the defendant's history and characteristics, including his character, his physical and mental condition, his family and community ties, his past conduct, his history relating to drug or alcohol abuse, and his criminal history.  *See id.*  A review of these factors precludes the court from finding that Mr. Fuller is not a danger to the safety of others and the community.

The most significant factor leading the court to conclude that Mr. Fuller remains a danger to others and the community is his lengthy and serious criminal record.  Mr.

Fuller has been committing crimes since the age of 19.  (*See* PSR ¶¶ 31-40.)  He has been convicted of felonies in five separate cases and convicted of misdemeanors in five more cases.  (*See id.*)  Most notably, Mr. Fuller has now been convicted twice in federal court of conspiracy to commit bank fraud and aggravated identity theft, the second time while still on supervision following his first conviction.  (*See id.* ¶¶ 6-11.)  Although the vast majority of Mr. Fuller's crimes are not crimes of violence, that does not mean that he is not a danger to the community.  *See United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *5 (W.D. Wash. May 7, 2020) ("[J]ust because Mr. Van Sickle's criminal history does not include crimes of violence, he should not assume that he bears little or no burden with respect to demonstrating that he does not pose a danger to the community.").  Mr. Fuller has made a career out of fraudulent financial schemes.  Due to the economic impacts of the COVID-19 pandemic, large segments of the public have recently suffered severe financial setbacks, unemployment, and other deprivations that may render them particularly vulnerable to those types of fraudulent schemes.  Although Mr. Fuller has expressed remorse and indicated that he intends to become a law-abiding citizen, he made similar representations in front of Judge Pechman in 2009.  (*See* Gov. Sentencing Mem. at 2, Ex. 1.)  Yet, Mr. Fuller returned to an almost identical fraudulent scheme upon his release.

Given Mr. Fuller's lengthy history of serious criminal behavior and his prior misrepresentations about his willingness to course-correct, the court cannot conclude that Mr. Fuller's statements of remorse, efforts to educate himself while incarcerated, indications of familial support, or any other grounds that Mr. Fuller submits, mitigate his

1 continuing danger to others and the community. Thus, on this independent ground, the

2 court also DENIES Mr. Fuller's motion for compassionate release.

### IV. CONCLUSION

Based on the foregoing analysis, the court DENIES Mr. Fuller's motion for compassionate release (Dkt. # 46).

Dated this 20th day of May, 2020.

*[signature]*

JAMES L. ROBART
United States District Judge